LIBBIE KEHOE, Respondent, v. EDWARD G. TAYLOR
*et al.*, Appellants.

Kansas City Court of Appeals, July 2, 1888.

1. PRACTICE—DECREE IN CHANCERY—REVIEW OF ON APPEAL.—It is
not necessary to the validity of a decree, in chancery, that there
should be any special finding of facts by the court.  If this
court, on review, should find the essential facts to exist, it would
not be bound by the findings of the trial court in a chancery case ;
and again, if the facts found by the trial court be sufficient to
warrant the decree under the pleadings, the judgment would still
stand.

2. —— PROOF OF ALL AVERMENTS NOT ALWAYS ESSENTIAL TO
RECOVERY—RULE CONCERNING.—It is a well-recognized rule of
practice that every averment, even of material matter, need not be
proved.  If there be sufficient proof of the remaining substantive
allegations constitutive of a cause of action, the ends of the law
are attained.  But if the bill alleges a case of fraud, and the title
to relief rests upon the fraud only, the bill will be dismissed if the
fraud as alleged be not proved ; but if it rests also upon other
matters which are sufficient to give the court jurisdiction and these
are proved, relief will be given in respect of so much of the bill as
is proved.

3. FRAUD—WHAT CONSTITUTES IT, IN CONTEMPLATION OF COURTS OF
EQUITY.—Fraud, in the contemplation of a court of equity, may
be said to include properly, all acts, omissions, and concealments
which involve a breach of legal or equitable duty, trust, or con-
fidence, justly reposed, and are injurious to another ; or by which
an undue or unconscientious advantage is taken of another.

4. ASSIGNMENT—POSITION OF ASSIGNEE IN—DUTIES TO CREDITORS AND
ASSIGNOR.—The assignee, in an assignment, is the trustee for both
the debtor and creditors, to see that the trust property is so admin-
istered as to secure to the creditors, as far as possible, their just
claims, and then to account to the debtor for any surplus.  His
office as assignee is wholly incompatible with that of an attorney
for the assignor or the creditors, and such fact would justify his
removal if brought to the court's attention having jurisdiction over
the assignment proceedings.

APPEAL from Clay Circuit Court, HON. THOMAS E.
TURNEY, Special Judge.

*Affirmed.*

*Motion for rehearing denied.*

Statement of case by the court.

This is a suit in equity by a creditor against an assignee of an insolvent estate. The petition, substantially, alleges, that on ——— day of January, 1882, one Rufus Suits being insolvent made an assignment to the defendant Taylor for the benefit of creditors. Taylor duly qualified and entered upon the duties of his office. It charges that at the time aforesaid, Taylor and his co-defendant Scott were engaged as partners in the practice of law; that they were acting as the counsel and attorneys of said Suits, and so continued to act throughout the administration of the estate, with the understanding between them that they were to share as partners in all fees to be charged against said Suits, and in the fees of the assignee; that at the time of said assignment Suits was owing the plaintiff a debt, evidenced by a note, for the sum of $736.75 ; also was indebted to his wife Elizabeth Suits, in the sum of twenty-one hundred and fifty dollars, evidenced by a note, and to his daughter Carrie Suits in the sum of five hundred dollars, evidenced by a note, with a credit thereon of four hundred dollars. The petition then charges that the said creditors authorized said Suits to have their claims allowed by the assignee ; that the assignee did allow said claims, but fraudulently and wrongfully made the allowance in the name of his partner Scott, for the purpose of enabling said Scott to collect the dividends arising thereon, and applying the same to the use of the assignee and said Scott ; that said claims were so allowed without any authority whatever from the said creditors, and without their knowledge or consent ; that they supposed until long thereafter that the claims were allowed in their own names. It is further charged that the assignee had declared two dividends on

said allowance, one for thirty per cent. and the other for seven per cent. of the principal sums, as shown by the term reports of the assignee; that plaintiff does not know whether said dividends have been paid over to said Scott, but if they have been it was fraudulently done, etc., to enable said assignee to obtain credit therefor in his settlement with the court. The claims of said Elizabeth and Carrie Suits were assigned to plaintiff for the purpose of enabling her to join all of said claims in one action. The petition prays for an accounting by defendants, and for judgment for the amount of said dividends.

The answer tendered the general issue.

Plaintiff's evidence tended to sustain the allegations of the petition so far as the facts are concerned respecting the assignment, and the indebtedness of said Suits, and the allowance by Taylor of the said claims in the name of Scott. There was sufficient evidence to justify Suits in presenting for the claimants their demands for allowance; but there was no evidence before the assignee, or the trial court, to justify the inference that the parties authorized the allowances to be made in the name of Scott. Nor did they in fact ascertain that the claims had been so allowed until long thereafter. The notes held by the creditors were never presented to the assignee but in fact remained all the time in their possession. The evidence further showed that Scott and Taylor were partners as charged, and that they were counsel for the assignor, and were to share equally in the fees arising therefrom as well as in the fees of the assignee. The appraised value of the assets inventoried by the assignee amounted to $10,472.84. Taylor took charge of the stock of goods, and proceeded to sell privately until he had realized about $5,011.84. He then, at the instance of Suits, sold the remainder in a lump to one Saltsman, a relative of Suits, for the sum of sixty-four hundred dollars, and he collected on accounts $721.24. As shown by the last term reports made to the court by Taylor, there was in his hands

at the time this action was brought a balance of $2,057.07, after paying out all dividends.

The evidence on the part of the defendant Taylor tended to show that it was the expectation that Suits would soon make a compromise with his creditors in the east, and obtain control of the goods. To this end the sale was made to Saltsman, which was merely colorable, for the benefit of Mrs. Suits. Scott then went east to see said creditors, and succeeded in effecting a settlement with them. The money with which he made these adjustments was furnished him by Mrs. Suits, to the amount of four thousand dollars, and the balance was furnished by Taylor out of the monies in his hands as assignee. Taylor testified that Scott took the assignment of the claims so compromised by him in his (Scott's) name, and then had them allowed by Taylor against the estate in the name of Scott; that this was done to protect the assignee and Scott for the money so advanced by the assignee, and for their fees. Taylor gives as a reason for allowing the claims of plaintiff, Mrs. Suits and Carrie, in the name of Scott, that he understood from Suits that it was to be done in that way, as Suits was to pay these debts when he got control of the property, as he regarded them as debts of honor. He took from Scott receipts for the dividends on all the claims so allowed in Scott's name, though in fact no money passed. He accounts for the balance of money in his hands, as shown by his last term report, by crediting it with the amount of Scott's expenses in effecting the compromise with the eastern creditors, $209.50, and five hundred dollars, fee charged Suits for effecting said compromise, etc. The assignee also claimed a fee of one thousand dollars for his services.

The evidence also showed that one Henry Smith was a creditor of said estate, whose claim was allowed by Taylor. Taylor claimed that Suits was to settle this claim of Smith after he got the goods back. This Suits denied, and refused to so do. Thereupon Taylor induced Smith to bring an action by attachment against

the goods so bought in by Saltsman, in which Mrs. Suits interpleaded, and the issues therein were determined in her favor.    Thereupon Taylor had to pay to Smith his dividend out of the monies in his hands.    And as he had given an indemnifying bond to the sheriff in making said levy, he became bound for the costs therein, which he paid.    So he claims that after paying out these sums he in fact had left in his hands no money belonging to the estate ; and that any dividend he may be required to pay over to these claimants would come out of his own pocket.

There was other evidence bearing upon the conduct of Scott in this matter, and the manner of managing this estate ; but the foregoing are the important facts. Scott did not testify in the case.

The court made decree as follows :    The court finds that the plaintiff Libbie Kehoe, was the owner of the notes as described as hers in the petition, and that the fact was known to the defendant, the assignee, at the time the notes were allowed in the name of the defendant Scott.    That the allowance was made in the name of Scott without authority from plaintiff, without her knowledge, and without negligence on her part.    That the allowance was so made through the culpable negligence of the assignee and in violation of his duties as such.    It is, therefore, ordered that the assignee pay to the plaintiff the dividends of thirty and seven per cent. on said allowances, with interest at the rate of six per cent. per annum from the institution of this suit, and if any receipts for said dividends, or any part of them, have been given by the defendant Scott, the same are declared void and cancelled.    That the allowance on the notes be transferred by the defendant Scott to the plaintiff.    The court finds that Elizabeth Suits is the owner of the allowances made on notes alleged in the petition to be hers.    That she knew of and acquiesced in the use by the assignee of the money actually received by him as assignee in the settlement of the debts owing by her husband in New

York and Chicago, and is not entitled to any relief against the assignee. That Carrie Suits is the owner of the allowance of one hundred dollars. That the plaintiff, as the trustee of an express trust, was authorized to sue for the claims of Elizabeth and Carrie Suits, and the defendant Scott is ordered to transfer to her the allowance herein found to belong to them, the said Elizabeth and Carrie Suits.

T. S. B. SLAUGHTER and WASH ADAMS, for the appellants.

I. When fraud is alleged it must be clearly and distinctly proved as alleged. Bump's Kerr on Fraud and Mistake, 382; *Schields v. Hickey*, 26 Mo. App. 194; *Muenks v. Bunch*, 90 Mo. 500; *Priest v. Way*, 87 Mo. 16; *Lexox v. Harrison*, 88 Mo. 491; *Scheppelman v. Feurth*, 87 Mo. 351.

II. The assignee can only allow such claims as are presented to him at the proper time and place. He acts in that regard in a judicial capacity, and his decisions are final unless appealed from. Rev. Stat., 1879, secs. 373, 376; *Building Association v. Zoll*, 83 Mo. 95; *Eppright v. Kauffman's Adm'r*, 90 Mo. 25. If the proof shows a state of facts inconsistent with the charge of fraud, the findings should be for defendants. *Priest v. Way*, 87 Mo. 16. Plaintiff is only entitled to relief upon the facts proved when those facts are based upon the petition. *Muenks v. Bunch*, 90 Mo. 500; *Dunn v. White, Adm'r*, 63 Mo. 181. To warrant a recovery on the charge of fraud there must be a concurrence of both fraud and injury. *Lenox v. Harrison*, 88 Mo. 491; *Dormitzer v. Greves*, 3 Mo. App. 593. If Suits was plaintiff's agent, and authorized her claim to be allowed in a manner not directed by her, and the defendants were innocent, she should suffer the loss, if any, not they. Story on Agency [8 Ed.] sec. 127.

III. Fraud will not be assumed. *Funkhouser v. Lay*, 78 Mo. 458. "The legal presumption always is

that a trustee has faithfully executed his trust, unless the contrary is fully and satisfactorily evinced." Burrill on Assignments [4 Ed.] sec. 462. Reasonable diligence was not shown. *Chamberlin v. Peltz*, 1 Mo. App. 183.

DOBSON, DOUGLASS & TRIMBLE, for the respondent.

I.   If the bill alleges a case of fraud and the title to relief rests upon that fraud only, the bill will be dismissed if the fraud, as alleged, is not proved. But if the case does not entirely rest upon the proof of fraud, but rests also upon other matters, which are sufficient to give the court jurisdiction, and the case of fraud is not proved, but the other matters are proved, relief will be given in respect of so much of the bill as is proved. Bump's Kerr on Fraud, 383. But the proof of conspiracy and actual fraud, if necessary to be proved, are established by the evidence and the record before the court. The rules of evidence are the same in equity as at law. Whether certain facts, as proved, constitute a fraud is a question for the court ; and it does not have to be proved by affirmative, direct, or positive proof. Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case. Bump's Kerr on Fraud and Mistake, 383 ; *Braden v. Walker*, 2 Harr. & J. 285 ; *Muenks v. Bunch*, 90 Mo. 500 ; *Frederick v. Allgaier*, 88 Mo. 598. The fact that the defendants did what the proof shows they did, whether from ignorance, or a previous agreement, or "conspiracy," to do it, or simply to satisfy the itching of prehensible palms, makes no manner of difference to the plaintiff, or to a court of equity. Her dividends were absorbed by another, and she had, by means of the peculiar and unheard of course adopted by the defendants, no remedy at law. When the facts are told to a court of equity it is its duty and high privilege to interfere and grant relief. 1 Story's Eq. Jur. [11 Ed.] sec. 333.

II.   It devolves upon the defendants to show, by

satisfactory proof, that they had authority for having the accounts allowed in Scott's name, and for accounting to him for the dividends.

III. The point is made for the appellants that the respondent was negligent in not presenting her own claim for allowance before the assignee, and also that if she did not authorize Suits, or any one else, to have it allowed at all, she has no right to the allowance in Scott's favor, based upon her notes. But there is a tolerably ancient maxim of the law, to the effect that a man cannot take advantage of his own wrong. It does not lie in the mouths of these defendants to make any such objection. If the claims were wrongfully or illegally allowed in Scott's name instead of the true owners, they have a right to the fruits of such allowances, even if they never authorized their allowance in any manner, or even if they never knew there was an assignment.

IV. It was also attempted to be shown that there is no money in his, Taylor's, hands as assignee, but this claim is not only contradicted by the records he made in the circuit court, but by his own evidence, and that, too, allowing him to account to Suits individually for moneys received and disbursed and contradicting his sworn reports to the circuit court. By his fourth and fifth term reports there was, and still is, a balance in his hands of $2,057.07. The last report is made May 5, 1885, long after this suit was begun and after the payment of dividends on all claims allowed, including payments to Scott of about one thousand dollars on the three claims in controversy here, which would really make still in the defendants' hands about three thousand dollars, belonging to the assigned estate, unless the record made in the circuit court and sworn to as true, is false throughout. But if it were true, as asserted, that there was no money in Taylor's hands, it is because it was misappropriated. But we contend that the defendants cannot be heard in this case, upon the pleadings, or upon the facts, to contradict, or in any way impeach, the records made by them in the circuit court under the

oath of the defendant Taylor.  *Peters v. Clendenis*, 12 Mo. App. 521.

V.    But even to go behind the record made by Taylor, upon which he will ultimately have to settle in the circuit court, his own evidence shows that at the time he was called upon to settle these claims there was over fifteen hundred dollars of the assigned estate in his and Scott's hands.   It appears from the evidence that in order to try to force such a settlement with Suits as the defendants wanted, they induced some creditors of his to levy their writs of attachment and execution upon the stock of goods which had been bought and paid for by Mrs. Suits and was in her possession, and they indemnified the sheriff for making such a levy.   That Mrs. Suits sued the sheriff and recovered the value of her goods, and the defendants claim they had to pay the costs and a deficit between the judgment of Mrs. Suits and the amount her goods sold for, amounting to seven or eight hundred dollars, and they plead that payment as an extenuating circumstance in their favor.   This plea is not valid.

PHILIPS, P. J.—It is urged against the decree that it does not find the existence of the fraudulent conspiracy alleged in the petition, nor the fraudulent act charged against defendants in appropriating the proceeds of the dividends on the claims in question.

It was not necessary to the validity of the decree that there should have been any special finding of the facts by the court.   If this court on review should find the essential facts to exist we would not be bound by the findings of the lower court in a chancery case.   And again, if the facts found by the court be sufficient to warrant the decree under the pleadings the judgment would still stand.

It may be conceded to defendants that the evidence in the case may not have been sufficient to justify the court in finding that there was any actual conspiracy between defendants at the inception of this transaction

to obtain control of plaintiff's claims, and to parcel out the dividends among themselves. And if the existence of such facts were essential to maintain the decree it would fail. But it is a well-recognized rule of practice that every averment, even of material matter, need not be proved. If there be sufficient proof of the remaining substantive allegations constitutive of a cause of action the ends of the law are attained. *Wright v. McPike*, 70 Mo. 176 ; *Noffsinger v. Bailey*, 72 Mo. 216 ; *Gaty v. Sack*, 19 Mo. App. 477. So Kerr on Fraud and Mistakes, p. 383, lays down the rule as follows : "If the bill alleges a case of fraud, and the title to relief rests upon the fraud only, the bill will be dismissed, if the fraud as alleged be not proved. It cannot be allowed to be used for any secondary purpose. But if the case does not entirely rest upon the proof of fraud, but rests also upon other matters, which are sufficient to give the court jurisdiction, and the case of fraud is not proved, but the other matters are proved, relief will be given in respect of so much of the bill as is proved."

The substantive facts charged in the petition, omitting the word "fraudulently," are that said allowances were made by Taylor wrongfully, and without any authority whatever from the claimants, and without their knowledge or consent; and that by reason of defendants' misconduct in the matter plaintiff will lose her rightful dividend unless equity comes to her relief. Professor Tucker in his notes, after speaking of the impossibility of courts of equity laying down any definite boundary lines within which fraud may be found, as it is so infinite in its ramifications and devices, says : "All surprise, trick, cunning, dissembling, and any unfair way by which another is cheated, is fraud." So Kerr on Fraud, etc., pp. 42, 43, says : "Fraud in the contemplation of a court of equity, may be said to include properly all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another ; or by which an undue or unconscientious

advantage is taken of another. * * * Courts of equity do not affect to consider fraud in the light of a crime; it is not their province to punish, nor have they any censorial authority."

The facts in this case certainly involve a breach of duty in administering a trust fund, injurious to another, and which if permitted to go uncorrected would give the wrong-doer an unconscionable advantage over the party his misconduct wronged.

When the defendant Taylor took upon himself the office of an assignee the law stepped forward and clothed him with an express trust. He then became the minister of justice—to administer the estate coming into his hands precisely as the law directed, and not otherwise. He was the trustee for both the debtor and the creditors, to see that the trust property was so administered as to secure to the creditors, as far as possible, their just claims, and then to account to the debtor for any surplus.

It, therefore, becomes at once apparent that his office as such assignee was wholly incompatible with that of an attorney for the assignor or the creditors. In the allowance of claims against the estate he acted in a *quasi*-judicial capacity. He could not act either for the debtor or claimant. Yet the proof is, that the assignee and his co-defendant were attorneys throughout for the debtor, and their continued partnership extended to a division of the fees for the services rendered as attorneys to the debtor, and in the fees coming to the assignee. This dual position concerned him too much in the interest of the debtor, and the amount of fees that might be got out of him in the event the estate went back to him, after coercing settlements with the creditors, with consequent neglect of the rights and interests of the creditors. Such facts, if brought to the attention of the circuit court, having jurisdiction over the assign-ment proceedings, would have justified the immediate removal of the assignee. He sat as judge in allowing claims against the estate, and permitted his partner to

take judgment of allowance in his own name, without the notes of the claimants being brought into court, nor any legal evidence whatever of any authority to Scott to so have them allowed. And without the knowledge or consent of the owners of the notes, he paid over their dividends, nominally, to Scott. His only claim of authority for this proceeding is that he understood from Suits, the assignor, that he was authorized to so have the same done. Suits denies that he gave him any such authority, or that he had any such direction or permission from the holders of the notes. At his peril the assignee had to be satisfied of two facts, first, that Suits had any delegated power whatever from the principals, and second, that Suits was acting within the scope of his imputed agency. As a lawyer he knew that an agency could not be established by the mere declarations or acts of the imputed agent. *Anderson v. Volmer*, 83 Mo. 406. The burden of proving such agency rested on the defendant. *Craven v. Gilliland*, 63 Mo. 28.

Without inquiry of the known interested parties, he acted upon the faith of what Suits said, or on what he understood would be the issue of the assignment proceedings, if his partner succeeded on his end of the line in effecting compromises, and Suits should regain control of the goods, and resume business. Having departed from the plain and known path of the law in administering his office of trustee, in reliance upon the integrity of the assignor, by which defendants were to realize large expected compensation, they should look to the man whom they claim to have been acting for and trusting ; and not ask that the innocent plaintiff bear the loss of their palpable breach of duty. The danger of loss to which defendants' misconduct has exposed these unoffending claimants is sufficient to call into activity the powers of a court of equity, as without its interposition the plaintiff is without redress.

Had the assignee proceeded as the obligations of his undertaking required, he would have had ample assets

in his hands to pay the claims in question, to the exten. of the dividends allowed by him. The money he expended in costs in the attachment suit of Smith he can claim no credit for. As assignee he had nothing to do with the payment of fees against the assignor, their client. That was the individual debt of Suits. And even allowing the assignee a liberal compensation for his services as such assignee there was sufficient assets in his hands to pay the two dividends directed by the decree of the circuit court. If either he or the plaintiff is to suffer loss through his dealing with Suits rather than with the circuit court in administering the estate, it should be he who trusted to Suits, and the success of the scheme of an outside settlement.

It does not lie with defendants to tread back upon their own tracks by saying the allowance of the claims in the name of Scott being unauthorized, there is in fact no allowance of plaintiff's and Carrie Suits' claims which he can be compelled to pay. He made the allowances, and claimed settlement accordingly with the term court, while the plaintiff and Carrie were living under the impression that their claims were properly allowed ; and equity says no man shall be permitted to take advantage of his own wrong.

The whole trouble with the defendant Taylor, so far as he is concerned in this transaction, is, that he permitted himself to be improperly used by his partner and Suits, no doubt with the honest expectation that all would be fair in the sequel ; but the law, in the spirit of equity, demands that he shall not injure the innocent, whereby the least advantage shall accrue to himself.

The judgment of the circuit court must stand affirmed. It is so ordered. All concur.

*On motion for rehearing.*

PER CURIAM.—It is insisted in the motion for rehearing that the opinion herein is inconsistent with itself, in that it makes defendant answerable for the loss

of plaintiff's claim for having improperly and without authority, allowed it in the name of Scott; and that this position necessarily rests upon the idea that defendant had no authority whatever from plaintiff in the matter of allowing her claim. Hence, they argue, that plaintiff's claim was either allowed or it was not allowed; that the same argument which repudiates the act of the assignee in allowing the claim in the name of Scott would also repudiate its allowance at all; and as defendants cannot be held to account for a claim not presented and allowed, the logical result of the court's opinion must be to acquit defendants of any responsibility.

The premise assumed is false. As the opinion states, there was sufficient evidence to warrant the conclusion that Suits had authority from plaintiff to have her claim allowed. This was a limited, not a general agency. It carried with it all the power essential to accomplish the purpose desired by the principal, but nothing more. It did not authorize Suits to have the claim allowed in the name of anybody else. She had done nothing to indicate to the assignee that Suits was her general agent. There was no "holding out" by the principal to impress a third party with the belief that Suits was her general agent. The only evidence defendant had, as claimed by himself, was the naked statement of Suits. He was guilty, to say the least, of inexcusable negligence in thus allowing the claim, known to belong to the plaintiff, in the name of a third party, without the production of the note, or any evidence of an assignment, power of attorney, or other written authority from the known principal. Suits did have an agency, as the proof shows, to have the claim allowed. That was sufficient to authorize defendant Taylor to allow it in her name. When he went further and allowed it in the name of his partner, it was without authority, based solely upon what the limited agent said, with nothing in the conduct or acts of the principal to justify him in believing that Suits had a general

agency. On the contrary, the fact that Suits asked to have the claim of his principal allowed in the name of a third party, in the absence of the note, should have excited the suspicion of one sitting in judgment. The repudiation of the unwarranted act in allowing the claim in the name of Scott, does not, in equity, carry with it the result of a claim not allowed at all. The claim was presented and allowed, but in the name of a wrong party, under circumstances of culpability. Equity, which looks to substance and not to form, interposes and says, that allowance, as against the wrongdoers, shall enure to the benefit of the rightful party. It shall' stand, but the apparent beneficiary shall reap nothing from it. The rightful party shall be substituted, and receive the dividend declared in favor of Scott.

Again, when the assignee allowed the note in favor of Scott, which was *prima facie* due to and owned by plaintiff, the burden of proof rested upon the assignee to show his warrant for this act. The only evidence offered by him was his own testimony, that Suits told him to so allow it. This Suits denied, and testified that he did not tell the assignee to allow the claim in Scott's name. It is evident from the decree of the trial court that it found this issue against defendant. It is the recognized rule of this court, even in an equity proceeding, to defer to the conclusion of the trial court on a disputed question of fact arising on conflict of testimony.

We are unable to perceive from the record any conduct on the part of the plaintiff calculated to encourage the belief on the part of the assignee that she authorized the allowance of her note in the name of Scott. If she loses her claim, it will be through the wrongful act of defendants. The defendants can reap no benefit from their own wrong; and a court of equity will place the injured party where defendants' breach of duty has sought to displace her.

The motion is denied.